[Civ. No. 13509.   First Dist., Div. Two.   July 21, 1948.]

ERNEST ZOLEZZI et al., Respondents, v. FRANK
MICHELIS, Appellant.

Albert Picard for Appellant.

Morgan J. Doyle and J. Jos. Sullivan for Respondents.

GOODELL, J.—This is an appeal from a decree quieting respondents' title to a parcel of real property in San Francisco.

The property described in the complaint is 34 feet, 4½ inches by 157 feet, 6 inches in area, fronting on the northerly side of Lombard Street, and extending northerly.

Appellant by his answer denies respondents' title to *an undivided one-quarter interest in the northern-most 20 feet of the property* and by his cross-complaint asserts that he "is the owner in fee simple, entitled to the possession, and in possession" of such fractional interest.

Respondents' claim of title to the whole interest in the 20-foot strip is based on adverse possession. Such strip is all that is involved in this case.

Respondents' chain of title starts after the 1906 fire with a decree quieting the title of Allina Avy to the entire lot (157 feet, 6 inches in depth). On her death it was distributed to Eugene Avy, Edmond Avy, Robert C. Avy and Emilie A.

Chapuis. On February 26, 1930 these four distributees conveyed the entire lot by grant deed to Robert L. and Genevieve Mayock and on the same day the Mayocks conveyed it by grant deed to respondent Bessie Zolezzi. On April 12, 1943, she made a grant deed to herself and her husband, Ernest Zolezzi, as joint tenants, and they have so held it ever since.

Appellant's claim arises as follows: On February 6, 1930, 20 days before the deed to the Mayocks, Robert C. Avy, one of the four owners, executed a deed of trust to two trustees, for the benefit of Christine Woehleke, covering his one-quarter interest in the 20-foot strip (and other property not herein involved). At a trustees' sale the beneficiary was the bidder and on June 1, 1932 the trustees made a deed to her of the one-quarter interest, which deed was recorded on August 4, 1933. On March 26, 1945, she made a quitclaim deed of the 20-foot strip to appellant and his wife as joint tenants. Christine Woehleke filed a disclaimer in this suit.

On June 1, 1932, when Christine Woehleke acquired title by the trustees' deed, she became a tenant in common with Bessie Zolezzi of the 20-foot strip, their interests therein being one-quarter and three-quarters, respectively. Ever since then Bessie Zolezzi and her husband have been in the exclusive possession of every part of the property, including the 20-foot strip. The court found that the Zolezzis have been in possession of the whole property continuously since February 26, 1930, and have paid all taxes, and "that during all of said times, all said land has been protected by a substantial enclosure." The evidence shows that the main part of the lot is improved with a three-story structure consisting of six Romeo flats and that the Zolezzis moved into one of them as soon as Bessie Zolezzi bought the property, or possibly before. It shows, also, that the 20-foot strip is part of the backyard of the property and that there are some sheds thereon, built by respondents.

When Christine Woehleke became vested with the one-quarter interest in the 20-foot strip she apparently did nothing to assert such interest. Appellant points out that there is no evidence that she never entered upon or asserted any claim to the property. The answer to that contention is that regardless of whose burden it was to prove this—there being a cross-complaint herein on which appellant relies—the fact remains that the Zolezzis testified that they never had

seen Christine Woehleke, or heard of her, which, of course, is sufficient to prove that Christine Woehleke never asserted any claim, for the Zolezzis alone were in complete possession and they were the only persons to whom such claim could have been asserted.

Appellant relies on the rule, recently restated in *West* v. *Evans*, 29 Cal.2d 414, 418 [175 P.2d 219], that "The exclusive occupancy by a cotenant is deemed permissive; it does not become adverse until the tenant out of possession has had either actual or constructive notice that the possession of the cotenant is hostile to him." Under this rule the claim is made that respondents did nothing which could be construed as an ouster.

This rule, of course, is settled law. In this case, however, no tenancy in common came into existence until June 1, 1932, when the trustees' deed brought Christine Woehleke into the picture, more than two years after Bessie Zolezzi acquired title and entered possession. The trustees were never tenants in common with Bessie Zolezzi since a deed of trust "carries none of the incidents of ownership of the property, other than the right to convey upon default . . ." (*MacLeod* v. *Moran,* 153 Cal. 97, 99 [94 P. 604]; *Hollywood Lumber Co.* v. *Love,* 155 Cal. 270, 273 [100 P. 698]). It "conveys no right of possession to the trustee or the beneficiary; and the trustor, like a mortgagor, is entitled to the possession of the land . . . until his rights have been divested by a conveyance in the execution of the trust . . ." (25 Cal.Jur., pp. 41-42; *Kinnison* v. *Guaranty Liquidating Corp.,* 18 Cal.2d 256, 260 [115 P.2d 450]). Without the right of possession the trustees could not have become tenants in common, for such tenancy "requires for its existence but one unity, namely, that of *possession.*" (*DeWitt* v. *San Francisco,* 2 Cal. 289, 297; *Meyer* v. *Superior Court,* 200 Cal. 776, 792 [254 P. 1108]; *Furman* v. *Brewer,* 38 Cal.App. 687, 694 [177 P. 495]; *Wood* v. *Henley,* 88 Cal.App. 441, 452 [263 P. 870]; 7 Cal. Jur., p. 341.)

Respondent Bessie Zolezzi entered into possession under color of title by a deed purporting to convey *the whole title to the entire parcel* exclusively to her. When she so entered there were no cotenants in the picture, and never, from that day to this, has her open, notorious and exclusive possession (with her husband) been interrupted. *Her possession was not begun as a tenant in common with anyone, nor was it begun under a deed or other instrument defining her title*

*as one of cotenancy.* Hence the case is within the rule stated in *Akley* v. *Bassett,* 189 Cal. 625, 641-2 [209 P. 576], as follows: *"The rule is that when one enters avowedly as tenant in common with others,* his possession is the possession of the others, so long as the tenancy in common is not disclaimed. In such cases to constitute the ouster there must be acts of the most open and notorious character, clearly giving notice to the world, and to all having occasion to observe the condition and occupancy of the property, that the intention is to exclude, and does exclude the cotenant. *The rule thus stated, however has no application to a case where the possession of the person in question was neither avowedly begun as a tenant in common, nor instituted under a deed or instrument which defined his title as such. (Bath* v. *Valdez,* 70 Cal. 350, 358 [11 P. 724]; *Frick* v. *Sinon,* 75 Cal. 337, 339 [17 P. 439, 7 Am.St.Rep. 177]; *Elder* v. *McClaskey,* 70 Fed. 529, 538-540 [17 C.C.A. 251].)'' (Emphasis added.)

*Elder* v. *McClaskey* was again followed by *Johns* v. *Scobie,* 12 Cal.2d 618, 625 [86 P.2d 820, 121 A.L.R. 1404].

In adverse possession cases questions of fact include such as the following: ''Whether the occupancy of possession was adverse; whether the possession or use was under permission or license; whether or not the use was under a claim of right; whether the party claiming title to land by adverse possession entered into the possession acknowledging himself to be a cotenant, or whether he entered claiming the whole title; as to what constitutes sufficient inclosures; as to whether or not artificial barriers and acts of ownership are sufficient to notify the public that the land is appropriated; whether the possession was such that the owner must be presumed to have known of the claimant's exclusive ownership; whether or not taxes were assessed during the five years of adverse occupancy; whether there was an ouster; or whether right by prescription has been acquired.'' (1 Cal.Jur., pp. 635-6.)

In the case at bar there is ample evidence to support the findings which are in respondents' favor on the several issues. There are a few conflicts in the record with respect to possession but ''if there is any substantial evidence to support the judgment, it must be affirmed. All conflicts must be resolved in favor of the prevailing party and the evidence viewed in a light most favorable to him.'' (*O'Banion* v. *Borba,* 32 Cal.2d 145, 147 [195 P.2d 10].) The case comes within the rule stated in *Akley* v. *Bassett,* 189 Cal. 625, 641 [209 P. 576]

as follows: ''Any act of the cotenant in the exclusive possession which manifests an intention on his part to hold exclusively for himself is equivalent in law to an actual ouster. (1 Cal.Jur. 544; *Feliz* v. *Feliz*, 105 Cal. 1, 5 [38 P. 521].) A tenant in common who enters into the actual possession of land under claim and color of title, and who, with his predecessor in interest, has maintained possession, and exercised acts of ownership openly and notoriously, claiming the same adversely to other cotenants who are of age, and to all the world, and paying taxes assessed thereon for more than five years prior to the commencement of an action against him, thereby acquires a title by prescription under the statute of limitations. (*Gregory* v. *Gregory*, 102 Cal. 50, 53 [36 P. 364]; *Winterburn* v. *Chambers*, 91 Cal. 170, 184 [27 P. 658]; Freeman on Cotenancy and Partition, sec. 221.)''

Appellant relies on the fact that respondents filed a partition suit (which never was tried) against appellant and his wife after the quitclaim deed was recorded. In the complaint therein they alleged that appellants and respondents were tenants in common of the 20-foot strip, in one-quarter and three-quarter interests, respectively. This, it is argued, was a concession of appellant's ownership. It was an admission against interest, it is true, but it was no more than a piece of evidence in the case. It could not operate as a divestiture of respondents' title.

Appellant also relies on the fact that respondents offered to purchase his interest for $1,000. ''This clearly shows'' he argues, ''that the plaintiffs did not consider that their possession of the disputed property was adverse to the defendant, and tends to show that the plaintiffs' possession was in subordination to the title of said premises in defendant and his predecessor in title.'' Such an offer made by one in possession does not ''impair the character of his possession; although the fact of such . . . offer to purchase is admissible in evidence against him.'' (1 Cal.Jur. p. 548.)

We are satisfied that when Christine Woehleke executed the quitclaim deed to appellant she had ceased to have any interest in the property.

The judgment is affirmed.

Nourse, P. J., and Dooling, J., concurred.