[Civ. No. 19301.   Second Dist., Div. Two.   Mar. 20, 1953.]

DAN G. LeFEVRE et al., Respondents, v. A. H. BORWICK, as Administrator, etc., Appellant.

Warren M. Goodwin and Max Bergman for Appellant.

Walter S. Home for Respondents.

McCOMB, J.—From a judgment in favor of plaintiffs after trial before the court without a jury in an action to quiet title to a parcel of real property, defendant Borwick, as the administrator of the estate of Elva J. Wakeman, hereinafter referred to as defendant, appeals.

*Facts*: Elva J. Wakeman at the time of her death in December, 1922, owned a parcel of real property at 1640 East 49th Street, Los Angeles. Alva G. Rice was appointed administrator of the decedent's estate. He died in September, 1926, without having completed the administration of the estate. A new administratrix was appointed in March, 1951. The taxes due on the property for the fiscal year 1930-31 were not paid, with the result the property was sold to the state for nonpayment of taxes.

On July 1, 1936, a tax deed was executed by the county tax collector to the State of California. Thereafter the state took over the control and management of the property and collected rents from the occupants until the end of February, 1946.

On February 29, 1946, plaintiffs opened a five-year payment plan for the installment payment of the delinquent taxes on the property pursuant to sections 4216-4226 of the Revenue and Taxation Code by paying to the tax collector 20 per cent of the then delinquent taxes, penalties and costs. The State of California notified the tenant, who was in possession of the property at the time and who was paying rent to the state, that it would no longer collect any rent. Plaintiffs then collected rents from the occupants of the property from March 1, 1946 until August, 1951.

During the same period of time plaintiffs paid the tax collector the annual installments of the delinquent taxes which became due under the said five-year plan. On February 16, 1950, plaintiffs made the final payment and the property thereupon automatically ceased to be tax deeded to the state. Prior to the commencement of the present action plaintiffs paid the taxes which were levied and assessed against the property for the fiscal years 1946-47, 1947-48, 1948-49, 1949-50 and

1950-51. Taxes which were levied and assessed for the years 1951-52 were not fully paid by plaintiffs until January 7, 1952, which was after the commencement of this action on October 10, 1951.

On February 26, 1951, a petition by Lois Anderson Wray dated and verified February 21, 1951, before Roy LeFevre as a notary was filed in the estate of Elva J. Wakeman, praying for issuance to her of letters of administration as successor to the administrator who had died in 1926.

It is conceded that in filing such petition, Mrs. Wray acted on behalf of plaintiffs. The trial court found as follows:

"That the plaintiffs and cross-defendants Dan G. LeFevre and Esther J. LeFevre, husband and wife, as joint tenants, have been in the actual continuous and adverse occupation and exclusive possession of the land described as follows:

"The East 43 feet of Lot 25 of Rugby Ross Tract, as per map recorded in Book 3, Page 24 of Maps, in the office of the County Recorder of Los Angeles County, also known as 1640 East 49th Street, in the City of Los Angeles, County of Los Angeles, State of California, under a claim of title for more than five years succeeding the last day of February, 1946, and have paid all the taxes, state, county or municipal, which have been levied and assessed upon such land.

"That by reason of such possession of said land for such period and the payment of such taxes, the plaintiffs have acquired a title thereto by prescription being sufficient against all."

■ *Questions*: First: *Did the filing of a petition for letters of administration in the Estate of Wakeman by Mrs. Wray at the instigation of plaintiffs constitute acknowledgment by plaintiffs that title to the property in question was in the estate and not in plaintiffs?*

*No.* Such fact was merely evidence supporting defendants' claim that plaintiffs had acknowledged title in the estate but was not conclusive, and the trial court's finding to the contrary is binding upon this court. (See *Zolezzi* v. *Michelis*, 86 Cal.App.2d 827, 832 [195 P.2d 835] ; *Treager* v. *Friedman*, 79 Cal.App.2d 151, 170 [179 P.2d 387].)

*McCracken* v. *City of San Francisco*, 16 Cal. 591, *Parker* v. *Swett*, 40 Cal.App. 68 [180 P. 351], and *Colorado P.L. Co.* v. *Worden Co.*, 132 Cal.App. 720 [23 P.2d 314], are each factually distinguishable from the present case and therefore not here applicable.

■ Second: *Did the fact that during the period of redemption the tax title was in the State of California prevent plaintiffs from having an adverse possession sufficient to give them title by adverse possession?*

*No.* McManus v. *O'Sullivan,* 48 Cal. 7, 15, clearly states the rule that a person may obtain title by adverse possession where such party claims title against the entire world excepting the government. (See, also, *Lord* v. *Sawyer,* 57 Cal. 65, 67, and *Allen* v. *McKay & Co.,* 120 Cal. 332, 338 [52 P. 828].)

*Enos* v. *Murtaugh,* 47 Cal.App.2d 269 [117 P.2d 905], *People* v. *Maxfield,* 30 Cal.2d 485 [183 P.2d 897], and *Jaffray* v. *Mies,* 80 Cal.App.2d 291 [181 P.2d 672], are factually distinguishable from the instant case. In the case first cited it was held that plaintiff had obtained title by adverse possession against a mortgage executed by his mother while she was in actual possession of the property. In the second case the action was between the state and the redemptioner, while in the third case the evidence failed to prove that plaintiff had held the property hostile to the owner of record or anyone else. ·

■ Third: *Did the evidence show that plaintiffs had paid taxes which were levied and assessed against the property during the five years next preceding the commencement of the action?*

*Yes.* It is contended by defendants that plaintiffs did not pay the taxes levied and assessed against the property for the year 1951-52 until January 7, 1952, whereas the action was commenced on October 10, 1951. Section 2605 of the Revenue and Taxation Code (amended in 1949) provides that the taxes levied and assessed for the fiscal year 1951-52 should not become due until November 1, 1951, and that payment of the taxes so levied and assessed could not be made prior thereto. It is conceded that plaintiffs paid all taxes levied on the property for the fiscal years 1946-47, 1947-48, 1948-49, 1949-50 and 1950-51 prior to the commencement of the action and as plaintiffs' possession ripened into title not later than March 1, 1951, their inability to pay the taxes for the fiscal year 1951-52 prior to the commencement of the action did not defeat the title so acquired. (*Meier* v. *Meier,* 71 Cal.App.2d 502, 507 [6] [162 P.2d 950]; *Ortiz* v. *Pacific States Properties, Inc.,* 96 Cal.App.2d 34, 39 [7] [215 P.2d 514].)

■ Fourth: *Was plaintiffs' claim barred by the doctrine of unclean hands?*

*No.* The record is devoid of any evidence that plaintiffs

acted inequitably toward defendants. It disclooses that Mr. LeFevre attempted to get the attorney for the former administrator of the estate of Elva Wakeman to act as attorney for Mrs. Wray, and that such attorney refused to act; that he had not heard from the heirs for 15 or 20 years; that he made an attempt to locate the heirs and he talked to the former attorney and wrote to the husband of the deceased at the last address he had and received no answer.

Having exhausted his means of finding the heirs, he mailed the notices of filing of the petition to their last known addresses. There is no inequity shown by such evidence. ■■■ Title by adverse possession of necessity implies that plaintiff has entered upon the property in question wrongfully, but that the lapse of time has changed his tortious act into a lawful act. (*Packard* v. *Moss,* 68 Cal. 123, 131 [8 P. 818]; *Treager* v. *Friedman,* 79 Cal.App.2d 151, 170 [6] [179 P.2d 387].)

Affirmed.

Moore, P. J., and Fox, J., concurred.